PENN DEVELOPMENT CO. v. STONER et al.

(Circuit Court of Appeals, Ninth Circuit.  December 2, 1918.)

No. 3107.

MORTGAGES ⬤➡362—COLLUSIVE FORECLOSURE—RIGHTS OF VENDOR.

A corporation, which purchased oil property at trustee's sale under a mortgage, pursuant to contract with another corporation which had bought the property and assumed the mortgage, *held*, under the contract, to have only a lien as between the two corporations, leaving the property equitably that of the original purchaser and subject to foreclosure for its default in payments.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit by C. E. Stoner and others, directors and trustees of the Ventura-California Oil Company, against the Penn Development Company and others. Decree for complainants, from which defendant Penn Development Company appeals. Affirmed.

The amended bill, upon which this suit was tried and decided in the court below, first alleged that the complainant, Ventura-California Oil Company, a California corporation, was the owner and in possession of certain specifically described oil lands, situated in Ventura county, containing in the aggregate 569.54 acres, together with the oil wells thereon and the personal property connected therewith; that the defendants to the suit claimed some interest in the property, which claim was without the basis of any right; and for a second cause of suit the bill alleged, among other things, in substance that on the 22d of July, 1913, the complainant and the defendant Stephen W. Dorsey entered into a contract by which the complainant agreed to sell and the said Dorsey to buy all of the said property, the consideration therefor to be, according to the allegations of the bill, as follows:

"The defendant Dorsey agreed to transfer and assign, within 30 days of the date of said agreement, 11,000 shares of the capital stock of the Pacific Petroleum Company, one of said defendants, of the par value of $110,000, and $25,000 par value of first mortgage bonds of said Pacific Petroleum Company, secured by a mortgage on said property and other property in said state [of California] and to pay in cash $15,000 on or before November 1, 1913, and said Dorsey also assumed and agreed to pay an indebtedness represented by notes secured by a trust deed then existing against said property, made to and held by the Citizens' Trust & Savings Bank, as trustee, which notes had been executed to Benson Investment Company, a corporation, on February 19, 1913, and by it assigned to certain individuals residing in England. That the total amount of the issue of said notes secured by said trust deed made to said Citizens' Trust & Savings Bank was the sum of $50,000, but at the time when the said agreement was entered into the total amount unpaid thereon was the sum of $25,000, and interest at the rate of 6 per cent. for about three months, and that the assumption of said lien, and the payment thereof according to the terms of said notes and trust deed, was a part of the consideration for the purchase of said property on the part of said Dorsey."

The bill further alleged that Dorsey assigned the contract of purchase to the Pacific Petroleum Company, under which the latter entered into possession of the property, and that in and by the assignment that company "agreed to perform all the covenants on the part of said Dorsey contained in said contract to be performed, and assumed and agreed to pay all the payments provided therein, and to pay and satisfy the indebtedness secured by the trust deed to the Citizens' Trust & Savings Bank."

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The bill further alleged that subsequently the defendant Penn Development Company entered into an agreement with the Pacific Petroleum Company, by which it obtained some interest in the property, and that the individual defendants likewise obtained some interest therein, all of which interests so obtained were subject to the rights and interests of the complainant; that neither of the defendants paid to the complainant the $15,000 due on or before November 1, 1913, under the Dorsey contract, nor have they transferred or caused to be transferred the $25,000 par value of first mortgage bonds of the Pacific Petroleum Company, as required by the Dorsey contract, by reason of which failure each of the defendants forfeited all right to any of the property.

The answer of the Penn Development Company, while admitting that it had not paid to the complainant "the sum of $15,000, nor transferred nor caused to be transferred the particular mortgage bonds" referred to in the bill, denied that it was at any time legally or equitably required to make such payment or such transfer of bonds, and among other things alleged that on March 11, 1914, it purchased and acquired for a valuable consideration all of the property described in the bill, of which it has ever since been in continuous possession and its owner in fee.

The answer of the Pacific Petroleum Company denied that the complainant is, or at any time since March 11, 1914, has been, the owner of, or had any interest in, any of the property referred to, and alleged that ever since the day last mentioned the Penn Development Company has been its owner in fee. It also denied that the two defendant corporations ever entered into any agreement by which the Penn Development Company obtained any interest in the real property described in the bill, and denied that any interest ever acquired by the latter company was taken subject to any right of the complainant, and denied that the $15,000 referred to in the bill was not paid. The answer of the Pacific Petroleum Company admitted the nondelivery of the $25,000 par value bonds, in respect to which it alleged that it "duly authorized the issuance of bonds, including said bonds for plaintiff; that temporary receipts for such bonds were executed by this defendant, and delivered to and accepted by plaintiff; that this defendant has been hindered and delayed in the actual issuance and delivery of its bonds by the refusal of the trustee agreed upon to act, by litigation, and by other unforeseen events, but that this defendant intends in good faith to execute and deliver its said bonds to plaintiff as agreed, and that plaintiff has not been prejudiced or damaged by such delay in the issuance and delivery of said bonds"; and in addition to various other denials the Pacific Petroleum Company pleaded a judgment entered in the superior court of the county of Los Angeles, rendered in its favor against the Penn Development Company for $350,000, besides costs.

On the trial it was stipulated that the judgment so pleaded was in fact rendered on or about November 8, 1914, in an action brought by the Petroleum Company against the Penn Company for a breach of the aforesaid contract between those parties, and it was further stipulated that in February, 1913, the title to the property in controversy was in the Ventura California Oil Company.

Theodore Martin and William H. Cochran, both of Los Angeles, Cal., for appellant.

Tanner, Odell, Odell & Taft, Peyton H. Moore, and Porter & Sutton, all of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The suit was commenced in one of the superior courts of the state, from which it was transferred to the court below on motion of the defendants thereto. The complainant, being the owner of the lands involved, on which oil was then being produced, and of the appurtenant property,

had executed a trust deed covering it to the Citizens' Trust & Savings Bank of Los Angeles to secure certain of its indebtedness, on which there remained unpaid $25,000, with certain interest thereon. One Stephen W. Dorsey, owner of a majority of the stock of the Pacific Petroleum Company, a corporation, then entered into a contract with the complainant, by which the latter agreed to sell, and he to buy, all of the said property, the consideration therefor being his assumption of and agreement to pay the indebtedness to the bank, $15,000 in cash on or before November 1, 1913, $25,000 par value of first mortgage bonds of the said Pacific Petroleum Company, and 11,000 shares of its stock, of the par value of $110,000, and all taxes upon the property accruing subsequent to the fiscal year 1912–1913—the contract expressly providing that Dorsey should enter into possession of the property, and have the right to operate the wells thereon and to drill other wells, and to extract and sell the oil therefrom, during his performance of the contract, and that, in the event of the breach by him of any of the provisions of the agreement, the complainant should have the right to foreclose the contract, in which event Dorsey should forfeit any money, bonds, or stock theretofore paid by him, and surrender possession of the premises. The contract further provided that it should bind the successors and assigns of the respective parties, and that upon full performance of its provisions by Dorsey the complainant would execute to him or to his assigns a conveyance of the title to the property.

Two days after the contract was executed Dorsey executed to the Pacific Petroleum Company an assignment of the contract, concluding with the clause, "Subject to all the conditions contained in said agreement upon the part of the party of the first part herein to be performed and which the party of the second part herein agrees to perform," which assignment does not appear to have been signed by the assignee. The answer, however, of the Pacific Petroleum Company, as well as other portions of the record, abundantly show that such assignment was accepted by that company, and that it delivered to the complainant, in pursuance of its contract with Dorsey, the 11,-000 shares of the stock of the said Pacific Petroleum Company stipulated for, and denied that it had not paid the $15,000 in cash as provided for by the contract, and, while admitting the nondelivery of the $25,000 par value bonds of the Petroleum Company, set up that instead thereof it had delivered, and the complainant had accepted, "temporary receipts," and what is designated in other portions of the record as "interim bonds."

The record shows that, the interest on the $25,000 remaining of the indebtedness to the Citizens' Trust & Savings Bank not having been paid when due, the trustee advertised the property in question for sale, pursuant to the provisions of the trust deed securing the said indebtedness, designating March 11, 1914, as the time when it would offer at public sale all of the said property in satisfaction of the lien thereon secured by the trust deed. Neither Dorsey nor the Pacific Petroleum Company, the majority of the stock of which, as has been said, he owned, and who with said company owned or claimed to own various leasehold interests in other oil-bearing lands in California,

being able to pay the indebtedness against the property here in question, Dorsey went East in the endeavor to raise the necessary money, resulting in the incorporation of the appellant Penn Development Company, and in the execution February 17, 1914, of a contract between that company and the Pacific Petroleum Company, which, after reciting that—

"Whereas, Stephen W. Dorsey is the owner of a majority of the capital stock of the Pacific Petroleum Company; and

"Whereas, the said Pacific Petroleum Company is under contract to purchase, in fee simple, certain oil properties in the state of California, and is the holder of certain leasehold interests in other oil properties in California; and

"Whereas, the Pacific Petroleum Company has heretofore, under date of July 24, 1913, executed its mortgage or deed of trust to secure certain bonds upon the said property when acquired; and

"Whereas, certain certificates have been issued by the Pacific Petroleum Company, agreeing to deliver bonds if and when issued; and

"Whereas, certain of the agreed purchase price has not been paid on certain of the properties under contract of purchase as aforesaid; and

"Whereas, certain underlying mortgages assumed by the Pacific Petroleum Company have not been paid; and

"Whereas, the Pacific Petroleum Company is indebted to various parties, and is without means to pay said indebtedness; and

"Whereas, the Pacific Petroleum Company is desirous of entering into an agreement under which its property may be, to such extent as may be found possible, preserved, upon the terms and conditions set forth in this agreement; and

"Whereas, the property known as the Ventura-California property is about to be sold in proceedings under a trust deed"

—expressly provided, among other things, as follows:

"First. The Penn Development Company agrees to purchase at a sum not exceeding thirty thousand dollars ($30,000), at the forthcoming trustee's sale, the title in fee simple of the Ventura-California property [specifically describing the property in question]"—the Penn Development Company "to take title to the same in fee simple absolutely without conditions or trust relations of any kind whatsoever, except the Penn Development Company shall forthwith enter into an option in the form attached hereto as Exhibit A.

"Second. The Penn Development Company agrees to advance for the purpose of the preservation of the assets of the Pacific Petroleum Company the additional sum of thirty thousand dollars ($30,000) over and above the sum paid for acquiring the aforesaid Ventura California property, which said sum shall be used and applied" to various specified purposes relating to the leasehold interests that have been referred to, and including "the payment for labor and other claims against the Pacific Petroleum Company," aggregating $6,500, and "$4,000 to be expended upon the cementing, redrilling, and bringing into operation of the two existing wells on the Ventura-California property. * * *

"Fourth. The Pacific Petroleum Company hereby transfers, sets over, and assigns to the Penn Development Company all its right, title, and interest of every kind and description in and to all the oil to be derived from the operation of all the properties owned or leased by it, or held by it under contract, to be held by the Penn Development Company, in trust" (a) to pay certain specified expenses: (b) "to retain the monthly sum of two thousand five hundred dollars ($2.500) for the period of four (4) months from the date hereof, and thereafter to retain the monthly sum of five thousand dollars ($5,000) until all the money advanced for the benefit of the Pacific Petroleum Company shall have been paid to the Penn Development Company, or until such further period as shall be sufficient to pay to the Penn Development Company the amount to be paid under the option hereto attached as Exhibit A for the Ventura-California property; (c) the balance to be used

for the purposes of the Pacific Petroleum Company for the liquidation of the items named in paragraph 2 hereof, as the said Dorsey from time to time shall determine, and upon the property of the Pacific Petroleum Company as the said Dorsey and counsel for the Penn Development Company shall determine.   *   *   *

"Sixth. In the event of the failure of the Penn Development Company becoming the purchaser at the sale of the Ventura-California property after a bid of not exceeding thirty thousand dollars ($30,000), no obligation shall exist upon the Penn Development Company to carry out any part of this agreement, but this agreement shall remain in full force and effect for the benefit of the Penn Development Company until the return to it of all sums theretofore advanced, together with all expenses incurred, and a counsel fee to counsel for the Penn Development Company."

And by the seventh paragraph of this contract the Pacific Petroleum Company covenanted, among other things:

"That upon the payment of not exceeding $30,000 the title in fee simple may and shall be purchased by the Penn Development Company of the Ventura-California property on March 11, 1914, or on any adjournment thereof," and "that there are two wells on the Ventura California property, that the same were oil-producing wells until September, 1913, and that the same can be and will be brought into operation by the expenditure estimated not to exceed four thousand dollars ($4,000)."

The Exhibit A referred to in the contract between these two corporations, and thereby made part thereof, is an exclusive option given by the Penn Development Company to the Pacific Petroleum Company to purchase the property here in question "at any time within three years for the sum of two hundred thousand ($200,000) in cash, and upon the further delivery to the Penn Development Company of 25 per cent. of all the capital stock issued and outstanding issued by the Pacific Petroleum Company or by its successor, less only" (a) such stock as should remain in the treasury or be issued pending the exercise of the option with the approval of counsel for the Penn Development Company for development or financing purposes; (b) such stock as should be issued and delivered for the funding of indebtedness of the corporation; (c) such stock as should be issued and delivered for "the payment in part purchase to other than the said Stephen W. Dorsey, for the part payment of the properties acquired by the Pacific Petroleum Company." And as conditions precedent to its exercise, the option expressly provided the following:

"(1) All outstanding bonds or agreements to receive bonds shall be canceled by the Pacific Petroleum Company and preferred stock issued therefor to an amount not to exceed $600,000.

"(2) Such amount of the preferred stock as shall be agreed upon by Dorsey and the counsel for the Penn Development Company shall be left in the treasury of the company for sale for development purposes, and not less than one-third of the capital stock shall be left in the treasury for development purposes.

"(3) There shall be subtracted from the purchase price under this option:

"(a) Twice such sum as shall comprise the difference between the amount advanced by the Penn Development Company and one hundred thousand dollars ($100,000);

"(b) Such sums as shall have been received by the Penn Development Company under the operation of subdivision (b) of paragraph 4 of a certain agreement made and entered into between the Pacific Petroleum Company and the Penn Development Company, and dated the 17th day of February, 1914.

"(4) The Pacific Petroleum Company shall at the option of the said Stephen W. Dorsey have the right to sell all of its assets for cash or other securities for such sum or sums as shall in the opinion of the said Stephen W. Dorsey and counsel for the Penn Development Company not be equivalent to less than the total sum of two million dollars ($2,000,000). Should such sale be made, one-half of the sum to be paid to the Penn Development Company under the terms of this option shall be subtracted from the 25 per cent. to be received under the terms of this option by the Penn Development Company out of the proceeds of such sale.

"(5) Should the Pacific Petroleum Company in its discretion after the repayment of the amount due to the Penn Development Company for advances cease the payment to the Penn Development Company is authorized to retain under subdivision (b) of paragraph 4 of a certain agreement made and entered into between the Pacific Petroleum Company and the Penn Development Company, and dated the 17th day of February, 1914, this option shall forthwith terminate and expire."

The record shows that, in pursuance of the foregoing agreements between the parties mentioned, the Penn Development Company, through its attorney, purchased at the sale of the trustee bank on March 11, 1914, the properties in question, for $30,000, and received from such trustee a deed therefor, thereby acquiring the legal title to the property of the complainant without the payment to it of the consideration specified in the agreement between it and Dorsey, whose rights passed to and whose obligations were assumed by the Pacific Petroleum Company, which company, the record further shows, for breach of the foregoing obligations of the present appellant, recovered judgment against it in the sum of $325,000, which, so far as appears, is still in force.

As a matter of course, all of the instruments referred to must be read and considered together, and, so read, and considered, we think it clear that the claim of the appellant to ownership in fee of the property in question, by virtue of the deed from the trustee bank, as against the successors in interest of the Ventura-California Oil Company, cannot be sustained. The contract between the Pacific Petroleum Company and the Penn Development Company not only expressly recognized the existence of the contract between the complainant and Dorsey, and the assignment by the latter to the Petroleum Company, and its assumption of Dorsey's obligations, but a number of the provisions of the contract between the Petroleum and Penn companies, as well as the oral testimony in the case, clearly show that both of those companies, not only knew that the Penn Company bought and received the title to the complainant's property through the sale of it by the trustee bank because of the failure of the Petroleum Company to perform the obligations of Dorsey which it had assumed, but also well knew from unmistakable provisions of the contract between the Petroleum and Penn Companies that the latter took the legal title to the property here involved as part security for the various sum of money it agreed to advance in and about the development and operation of this particular property, as well as other property referred to in the contracts. Beyond question, equity regards the conveyance of the complainant's property by the trustee bank to the Penn Development Company as a mortgage as between the latter and the Pacific Petroleum Company, leaving the property therein de-

scribed subject to foreclosure for default in the payment therefor which both of those companies by their agreements had assumed. These views are given substantial effect by the judgment of the court below, and in principle are well supported by the decisions of the Supreme Court of California, here applicable, in the cases of Keller v. Lewis, 53 Cal. 118; S. P. R. R. Co. v. Allen, 112 Cal. 455, 44 Pac. 796; Longmaid v. Coulter, 123 Cal. 208, 55 Pac. 791; Odd Fellows Savings Bank v. Brander, 124 Cal. 257, 56 Pac. 1109.

The judgment is affirmed.